THE UNION BANK OF LOUISIANA *v.* WILLIAM E. THOMPSON.

In an action, by a bank against the surety in a bond given by one of its officers for the faithful discharge of his duties, it is the exclusive province of the jury to ascertain whether the principal had been guilty of official neglect, and to what extent; but plaintiffs have a right to require the court to charge the jury, as to the nature and extent of the legal obligations of the defendant under his bond.

One who has bound himself as surety for an officer of a bank in a bond, the condition of which recites that, the principal " shall well and truly perform and fulfil all the duties incumbent upon him by virtue of his office, or such other as may be assigned to him, or shall pay to the bank such damages or losses as it may incur by reason of the unfaithful performance of any of the said duties of said office," will be liable for any loss which the bank may sustain in consequence of any negligence of the principal, gross or slight, in the discharge of his official du-

ties. The liability of the surety is not restricted to losses resulting from the unfaithfulness or dishonesty of the principal. C. C. 1924, 1935.

The surety of an officer of a bank, sued by the bank for the amount of certain notes which plaintiffs alleged that they had been compelled to pay to the holders, in consequence of the neglect of the principal to have them protested at maturity as it was his official duty to do, whereby the endorsers were discharged, may show in reduction of damages, that the parties were liable notwithstanding the want of protest, or were insolvent when the notes matured. It was the duty of the bank, before paying the amount of the notes, to ascertain whether it was necessary to have had them protested. If the parties were insolvent at the time no loss can have been sustained from the want of protest, and the holders could not have recovered against the bank, nor can the surety be made liable to the latter for more than the injury really sustained by the holders of the notes.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. *Denis*, for the appellants.

*Benjamin*, *Peyton* and *I. W. Smith*, for the defendant. The defendant cannot be held liable for a mere oversight of the party for whom he was surety. This has been decided in New York. See 10 Johnson, 271. But if the surety was liable, he has been discharged by the failure of plaintiffs to give defendant reasonable notice thereof. Plaintiffs were guilty of gross *laches*. No attempt was made by them for nearly two years, to collect the notes ; and the payment of their amount to the holders must be considered to have been made at their risk.

SIMON, J. The Union Bank of Louisiana sues the defendant as the surety of one John Popham, on the bond given by the latter to secure the true and faithful performance of his duties as a note clerk of the said bank, to recover of him, the defendant, the sum of $11,240 87, alleged to be the aggregate amount of sundry notes and obligations received by Popham in his said capacity for collection, and kept by him in his possession until after they were due, by reason of which the endorsers were discharged, and the bank had to pay and indemnify the bearers. The action is based on the gross neglect and fraudulent conduct of Popham, in the discharge of his duties as note clerk.

The defendant, admitting his signature to the bond sued on, pleads the general issue.

This case was tried before a jury, who returned a verdict in favor of the defendant ; and a judgment having been rendered

thereon by the court, *a qua*, after overruling the plaintiffs' appli-
cation for a new trial, the latter appealed.

The record shows, that John Popham was appointed note clerk
in the Union Bank, in April, 1836, and that the defendant signed
his official bond as surety.   The condition of said bond is, "that
Popham *shall well and truly perform and fulfil all the duties
incumbent upon him*, by virtue of his said office as note clerk of
the said bank, *or such other as may be assigned to him*, or shall
well and truly pay into the said bank such damages or losses as
the bank may incur by reason of the unfaithful performance of
any of the said duties in said office."

It appears from the evidence, that Popham's duty as note clerk
was to receive all notes for collection that are deposited in bank,
or remitted from foreign banks ; to enter them in a book called
the *tickler ;* and to cause them to be protested at maturity, if dis-
honored.   It was also his duty to register all notes for collection,
endorse them, and return them to the cashier when payable out of
town.   In the months of March, April and May, 1837, a certain
number of notes and bills were given to Popham by the cashier.
They had been received from foreign banks, and were to be col-
lected by the Union Bank on account of its correspondents.   These
notes fell due in April and May, and in June the cashier received
letters from the banks which had remitted the bills and notes for
collection, inquiring as to their payment.   On referring to the
books, it was found that no entries had been made of these notes;
and, on search being made, they were discovered and found in a
drawer of the bank used by Popham, which was opened by a key
in the possession of the assistant note clerk, and during Popham's
absence.   A list was made by order of the cashier by one of the
witnesses, who states, that he put down all the notes and bills
found in the drawer.   This list was made on the next day after
the drawer was opened, and is made a part of the evidence.   The
bank thereupon paid the amount of the notes and bills to their
correspondents, by whom they had been forwarded or remitted for
collection.

It appears, also, that in February, 1839, (this suit having been
brought in May, 1838,) it was agreed on record by the parties'
counsel, that the officers of the bank should take the steps neces-

sary to collect the notes, bills, &c., which are the subject of this controversy, and that, on the day of the trial of this cause, (12th January, 1841,) the plaintiffs' counsel discontinued the action as to six notes, amounting together to the sum of $5498 65.

The questions which this case presents grow out of the charges of the judge, *a quo*, to the jury, on the two principal points in controversy.

1st. On the legal construction of the bond given by the defendant as surety, which his counsel pretends does not render him responsible for a mere neglect or forgetfulness of the clerk, but only for his fidelity and honesty.

2d. On the right of the bank to recover of the surety, without having given him notice on discovering Popham's fault, and without having taken the necessary steps to collect the notes, or at least ascertain the fact before paying the whole amount to the correspondents whether any protest had been really necessary on the notes, or whether any of the parties had been discharged by reason of the want of protest.

I. The plaintiffs' counsel requested the court to charge the jury that, " *if they were of opinion, from the evidence, that the plaintiffs have sustained any loss by the negligence, gross or slight, of Popham, in the discharge of his duties as note clerk, his surety, the defendant, is liable for such loss, under the bond which he has subscribed.*" But instead of this charge, which the judge, *a quo,* refused to give, he told the jury, " that whether the acts of Popham, which were complained of, were or were not breaches of the bond, was a matter for the jury to decide upon, and the court left it entirely to them."

We think the charge complained of was insufficient, and that it was the duty of the judge to state his views to the jury, on the nature of the legal obligations contracted by the defendant in becoming Popham's surety on his official bond. It is true, that the nature and extent of the duties which Popham was to perform as note clerk, are matters of fact which are to be ascertained by the evidence ; but the question whether the defendant is responsible as surety for the losses sustained by the gross or slight negligence of his principal, is a question depending entirely upon the legal construction of the condition of the bond ; and although it

is exclusively the province of the jury to answer to the question—has the defendant's principal been guilty of neglect, and to what extent, in the discharge of his duties,—it was clearly the duty of the judge to instruct them, whether or not, under the bond sued on, the defendant was, in his opinion, legally responsible for the consequences of such neglect. The plaintiffs' counsel had a right to call upon the court for a charge to the jury on the nature and extent of the legal obligations of the defendant under the bond sued on, and the judge ought, in our opinion, to have complied with this request, and not to have left the legal question entirely to the jury.

On the question itself, we feel disposed to say, that the charge called for was correct; and we cannot accede to the proposition that, under the conditions of the bond, the defendant became only responsible for his principal's fidelity and honesty. The expressions used in the bond, to wit, "*that if the said J. P. shall well and truly perform and fulfil all the duties incumbent upon him as note clerk, &c.,*" show that the bank in appointing him, had in contemplation not only that he should be faithful and honest, but that he should also perform and fulfil such duties as were imposed upon him by the nature of the business for which he was employed. It is also a principle of law, that the obligations of contracts extend to whatsoever is incident to such contracts, and that they may be violated, either actively, by doing something inconsistent with the obligation it has imposed, or passively, by not doing what was agreed to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract. Civil Code, arts. 1924, 1925. And it is no excuse for the officer, or his surety, when sued for the injurious consequences of his negligence in the exercise of his duties, to say, that he has only been guilty of a mere neglect or forgetfulness, and that he has never ceased to be faithful and honest. We cannot admit that an officer may neglect or forget the performance of his duties with impunity, when such neglect or forgetfulness becomes injurious to his employers; and it seems to us clear, that the bond sued on was taken with a view to protect the bank, not only against dishonesty and infidelity, but also against the consequences of the negligence of its officer. Such negli-

gence operated a breach of the bond, and the judge, *a quo*, should have charged the jury accordingly.

II. The second charge complained of by the plaintiffs' counsel is in these words: "If the Union Bank, (the judge undoubtedly meant to say the defendant,) could have shown that the parties were liable notwithstanding the want of protest, or that the parties to the notes or bills were insolvent, or, if the defendant could now show it, the payment of them by the plaintiffs did not render the surety liable therefor, and the defendant is now at liberty to show these facts, or to prove the insolvency of the parties in reduction of damages; and that, under these circumstances, the payment by the plaintiffs would be in their own wrong."

This charge appears to us correct. It was undoubtedly the duty of the bank, before paying the amount of the bills or notes, to ascertain whether there was any necessity for their being protested to bind the parties thereto; for if they were insolvent at the time of the protest, or at the periods when they were to be protested, it is clear that no loss had been sustained for want of protest. This the defendant was properly permitted to show, so as to obtain a reduction of the damages sued for, which, it is well settled, cannot go beyond the extent of the injury really sustained by the owners of the bills or notes; and we agree with the judge, *a quo*, in the opinion, that said defendant cannot be made liable for the payment made by the plaintiffs in their own wrong. Surely, the holders of the bills had no right to recover, if it was ascertained that, from the insolvency of the debtors, no loss had been sustained from the want of protest; and it would be unjust to throw upon the defendant a responsibility which the bank had never legally incurred, or which, on investigation, may be shown to have been without any object. Our ideas upon this subject are well expressed by the charge of the inferior court; and in the same manner as the defendant is entitled to be credited for any sum collected by the bank on the bills and notes, which, from the solvency of the drawers or acceptors have been recovered, so he has a right to obtain a reduction of the damages claimed, to the amount of those due by persons who were insolvent at the time that said bills and notes should have been protested.

The objections to the other charges have not been insisted on

by either party; and they have appeared to us proper and correct; but, as the jury were not sufficiently instructed by the charge first above noticed, we think justice requires that this case should be remanded for a new trial.

It is, therefore, ordered, that the judgment of the Commercial Court be annulled and reversed, and that this case be remanded to the lower court for a new trial, with instructions to the judge, *a quo*, to charge the jury in the manner and according to the legal principles expressed and recognized in this opinion; the costs of this appeal to be borne by the defendant and appellee.